IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EXECUTIVE RISK INDEMNITY INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 09 C 2750 |
| v. ) | |
| ) | Wayne R. Andersen |
| SPELTZ & WEIS, LLC a.k.a. ) | |
| WELLSPRING MANAGEMENT ) | |
| SERVICES LLC., et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM, OPINION AND ORDER

This case is before the Court on cross-motions of defendants David Speltz and Timothy Weis (the "Individual Defendants") on the one hand, and defendants Huron Consulting Group, Inc., Huron Consulting Services LLC, and Wellspring Management Services LLC (the "Huron Defendants") on the other. Both the Individual Defendants and Huron Defendants filed motions for summary judgment to award and distribute proceeds of Executive Risk Miscellaneous Professional Liability Policy No. 6800-6777 (the "Policy") which has been deposited with the Court's registry. For the following reasons, the Individual Defendants' motion for summary judgment [53] is denied in part, and the Huron Defendants' motion for summary judgment [67] is granted in part.

## PROCEDURAL BACKGROUND

This is an interpleader action in which plaintiff Executive Risk Indemnity Inc., ("Executive Risk") sought injunctive relief against competing claimants to a $2 million insurance policy. Because it faced competing claims by the Individual Defendants and Huron Defendants, Executive Risk brought this action under the Interpleader Act and filed a motion for summary

judgment to be discharged pursuant to 28 U.S.C. § 2361. An interpleader action typically involves two stages. First, the Court determines that interpleader is warranted when the interpleading party faces real and conflicting claims. *Aaron v. Mahl*, 550 F.3d 659, 663 (7th Cir. 2008). On October 16, 2009, we granted Executive Risk's motion and held that all of Executive Risk's legal obligations to the claimants pursuant to Executive Risk Miscellaneous Professional Liability Policy No. 6800-6777 (the "Executive Risk Policy") were thus satisfied.

The second stage of an interpleader action contemplates resolution of the remaining parties' claims to the proceeds based upon the merits. *Aaron*, 550 F.3d at 663. The Individual Defendants and the Huron Defendants remain as insured claimants to the Executive Risk Policy. The background and merits of those claims are addressed below.

## **FACTUAL BACKGROUND**

The Individual Defendants and the Huron Defendants came to be co-insureds under two insurance policies as a consequence of Huron Consulting Group's acquisition of the Individual Defendant's consulting firm, Speltz & Weis, LLC, in 2005. All of the parties are embroiled in litigation in New York relating to the management of the St. Vincent Hospital System. The respective defense costs incurred while defending that action easily exhaust the Executive Risk Policy's proceeds. At issue is how the proceeds of one of those polices, the Executive Risk Policy, should be apportioned.

The Executive Risk Policy provides $2 million in professional liability coverage including payment of defense costs. The Individual Defendants and Huron Defendants each have valid claims to the proceeds for payment of their defense costs. However, The Executive Risk Policy contains an "Other Insurance" clause that it "shall be specifically excess over . . . any other valid and

collectible insurance . . . except insurance specifically in excess of this Policy." Executive Risk Miscellaneous Professional Liability 6800-6777, at ¶ H. The parties also are insured by Liberty Surplus Corporation under Miscellaneous Professional Liability Insurance Policy No. EJE-B71-078123-015 (the "Liberty Surplus Policy"). This is a surplus insurance policy and provides that it "shall apply only in excess of the amount of any . . . limits of liability under Executive Risk policy No. 68006777." Liberty Surplus Policy Endorsement No. 7.

Additionally, the Individual Defendants are insured by National Union Fire Insurance Company under Policy No. 673-45-54 (the "National Union Policy") which has a policy limit of $30 million. The National Union Policy, like the Executive Risk Policy, insures the Individual Defendants for professional liability and provides for payment of defense costs. The National Union Policy also contains an "Other Insurance" clause stating, "[s]uch insurance as provided by this policy shall apply only as excess over any valid and collectible insurance. This policy shall be specifically excess of any other policy pursuant to which any other insurer has a duty to defend." National Union Policy ¶ 14. The Huron Defendants are not insured under the National Union Policy.

## STANDARD OF REVIEW

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 277, 248 (1986). Summary judgment is appropriate when the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that

3

party will bear the burden of proof at trial." *Celotex v. Catrett*, 477 U.S. 317, 322 (1986). The existence of a factual dispute is not sufficient to defeat a summary judgment motion; instead, the nonmoving party must present definite, competent evidence to rebut the motion for summary judgment. *See Butts v. Aurora Health Care, Inc.*, 387 F.3d 921, 924 (7th Cir. 2004). In reaching its holding, the court will consider the evidence in a light most favorable to the nonmoving party and draw all reasonable inferences in its favor. *See Anderson*, 477 U.S. at 255.

**DISCUSSION**

**I. The "Other Insurance" Clauses and Contribution Apportionment**

The threshold determination is whether the National Union Policy constitutes primary insurance coverage for the Individual Defendants or whether it is an excess policy rendering the Executive Risk Policy the only primary coverage for either party. This determination is made by an examination of the respective policies' "Other Insurance" clauses. *Avondale Indus., Inc. and Ogden Corp. v. Travelers Indem. Co.*, 774 F. Supp. 1416, 1436 (S.D.N.Y 1991) (holding that where "Other Insurance" clauses cancel each other out, both coverages must be treated as primary).

Both sides rely on New York law in support of their argument for the distribution of Executive Risk Policy, and neither raises a choice of law dispute. When the parties agree on the law that governs a dispute, and there is at least a reasonable relation between the dispute and that forum selected, the court should forego an independent choice-of-law issue and apply the parties' choice. *Harter v. Iowa Grain Co.*, 220 F.3d 544, 560 n. 13 (7th Cir. 2000). The parties to this dispute are primarily situated in New York, and this claim arises out of on-going litigation in New York. It is clear that a reasonable relation exists between this dispute and the state of New York, and therefore, New York law will be applied.

4

The National Union Policy and the Executive Risk Policy each contain an "Other Insurance" clause purporting to be excess of any other insurance policy covering the same risk. When two or more policies are excess to one another, the insurers apportion the costs of defending and indemnifying the insured on a *pro rata* basis. *Kajima Constr. Serv.*, *Inc., et al. v. CATI, Inc., et al.*, N.Y.S.2d 375, 376 (N.Y. App. Div. 1992). Specifically, when both polices contain "excess" "Other Insurance" clauses, they operate to cancel each other out, and both policies must be treated as primary coverage. *Avondale Indus., Inc. and Ogden Corp. v. Travelers Indem. Co.*, 774 F. Supp. 1416, 1436 (S.D.N.Y 1991). In *Travelers*, two "Other Insurance" clauses purported to be excess of any other valid and collectible insurance applying to the same loss, and the court held that the two clauses cancelled each other out. *Id.* Here, both the National Union Policy and Executive Risk Policy contain similar, mutually repugnant "Other insurance" clauses stating that each policy shall be excess of any other insurance to the same risk. Both policies cannot be "excess" policies of each other. To give equal effect to both is impossible.

The Individual Defendants argue that the language of the National Union Policy renders it excess to the Executive Risk Policy because it "specifically" mentions other insurance policies. The National Union Policy states, "[s]uch insurance as provided by this policy shall apply only as excess over any valid and collectible insurance. This policy shall be *specifically excess* of any other policy pursuant to which any other insurer has a duty to defend." ¶ 14 (emphasis added). The Individual Defendants focus on the use of the term "specifically" in this clause for support that it comes under the exception of the "Other Insurance" cancellation rule. Indeed, an exception to the mutual cancellation rule occurs when the terms of one policy specifically identify it as providing coverage in excess of another named policy. *Allstate Ins. Co. v. Farmers Ins. Group*, 488 N.Y.S.2d 703, 704 (N.Y. App. Div. 1985). In *Allstate*,

5

the court held that "Other Insurance" clauses were mutually repugnant due to the absence of specific reference to each other or language specifically making the policy secondary to all other excess policies. *Id.* at 705. The National Union Policy lacks that requisite specific reference. In fact, the "Other Insurance" language used in both the National Union Policy and the Executive Risk Policy is nearly identical to that used in *Allstate*. *Id.* Both policies at issue here as well as those in *Allstate* provide that the respective policies shall be excess insurance over any other collectible insurance. *Id.*

This is to be contrasted, however, with the Liberty Policy's "Other Insurance" clause, which identifies the Executive Risk by name and policy number. The Liberty Policy falls within the exception because it specifically includes the Executive Risk Policy in its "Other Insurance" clause, thereby rendering it an excess policy for the Huron Defendants as well as the Individual Defendants. In contrast, the National Union Policy, lacking any reference to a specified policy, does not indicate that the parties contemplated it serving as excess to the Executive Risk Policy or as secondary to all other excess insurance policies. Therefore, we find that the "Other Insurance" clauses of the National Union Policy and Executive Risk Policy operate to cancel out each other. Accordingly, the Executive Risk Policy is a second, primary policy for the Individual Defendants, and New York law requires that it ratably contribute to the Individual Defendants' defense costs according its proportionate policy limit. *Id.*; *see also Avondale*, 774 F. Supp. at 1436 (holding that two insurance policies were to be treated as primary and had an obligation to pay defense costs on a pro rata basis according to their respective policy limits).

**II. Distribution of Insurance Proceeds**

The Individual Defendants, Speltz and Weis, urge the court to distribute the Executive Risk Policy equally—$1 million to them and $1 million to the Huron Defendants. The Individual

Defendants seek support in New York precedent that apportioned defense costs equally between competing claimants. *Fed. Ins. Co. v. Cablevision Systems Dev. Co., et al.*, 662 F. Supp. 1537 (E.D.N.Y. 1987). *Cablevision*, however, is inapposite to the present case. There, the court held that the insurers demonstrated within each policy their intent to share indemnity losses equally. *Cablevision*, 662 F. Supp. at 1541. The *Cablevision* court relied upon this expressed intent when it held that the defense costs should also be apportioned equally. *Id.*; *see also Avondale*, 774 F. Supp. at 1436 (refusing to apply *Cablevision* because there was no indication of an intent to apportion liability equally). Here, like *Avondale*, the policies do not indicate any intent to share liability or defense costs equally. *Avondale*, 774 F. Supp. at 1436. Therefore, the Individual Defendants are entitled to a *pro rata* apportionment of the Executive Risk Policy proceeds to pay their defense costs based upon the respective limits of the National Union Policy and the Executive Risk Policy.

**III. The Non-Party Insurers**

The Individual Defendants additionally argue that this Court cannot proceed to interpret these policies because the insurers are necessary parties to the case. Additional or excess insurers, however, are not necessary parties to a suit between an insured and its primary insurer. *Travelers Indem. Co., et al., v. Crown Cork & Seal Co., Inc., et al.*, 865 F. Supp. 1083, 1089 (S.D.N.Y. 1994) (quoting *Continental Casualty Co. v. PPG Indus., Inc.*, No. 86 C 6076, 1987 U.S. LEXIS 978, at *2 (N.D. Ill. Feb. 6, 1987). In *Travelers*, the court faced the similar situation of a party arguing that other primary and excess insurers were indispensible parties in the determination of the defendant's entitlement to insurance coverage. *Travelers*, 865 F. Supp. at 1089. The *Travelers* court disagreed and so do we. *Id.* As we recognized in our prior opinion denying the Huron Defendants' Motion

7

to Dismiss, the non-parties have claimed no right to any proceeds from the Executive Risk Policy. Third parties are generally not necessary in an action to determine the rights of parties under a contract simply because the third parties' rights may possibly be affected by the outcome. *Id.* (citing *Special Jet Servs., Inc. v. Fed. Ins. Co.*, 83 F.R.D. 596, 599 (W.D. Pa. 1979). Therefore, the proceeds of the Executive Risk Policy may be distributed without appearances by any parties other than those presently before the Court.

## **CONCLUSION**

In summary, we find that the Executive Risk Policy and the National Union Policy share primary insurance obligations to the Individual Defendants. Because of the National Union Policy's $30 million limit and the Executive Risk Policy's $2 million limit, the Individual Defendants possess $32 million in primary coverage. Since the Executive Risk Policy represents $2 million of their total $32 million in primary coverage, they are entitled to proceeds from the Executive Risk Policy as measured by 2/32 of their defense costs.

Therefore, defendants David Speltz and Timothy Weis' motion for summary judgment requesting equal apportionment of the proceeds therefore [53] is denied in part, and defendants Huron Consulting Group, Inc., Huron Consulting Services LLC, and Wellspring Management Services LLC's motion for summary judgment requesting *pro rata* apportionment [67] is granted in part. We reserve judgment on the dollar amount the parties shall respectively receive from the Executive Risk Policy pending further submissions regarding the total defense costs incurred and the proper date by which those costs should be measured. This matter is set for status on May13, 2010 at 9:00 a.m.

It is so ordered.

_____
Wayne R. Andersen
United States District Judge


Dated: April 23, 2010

9